(72 App. Div. 9.)

## PEOPLE v. YOUNG.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

1. CRIMINAL LAW—HEARSAY—ADMISSIONS.

Evidence that after defendant's arrest a statement of a third person connecting him with the murder was read to him, and that he said nothing, is not admissible against him as an admission; the officer in charge cautioning him that he was not required to speak, as anything he said might be used against him, and telling him that the statement was to inform him of the nature of the evidence against him.

2. SAME—PREJUDICIAL ERROR.

Identity of defendant with the person who committed the killing being the principal question, error in admitting evidence that the statement of a third person connecting defendant with the killing was read to him, and he said nothing, is ground for reversal, though there was other sufficient evidence, if believed.

Hatch and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.

Duncan Young was convicted of murder, and appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

William North, for appellant.
Charles E. Le Barbier, for respondent.

INGRAHAM, J. The defendant, with two others, was indicted for the murder of one George Eberhardt on the 24th day of January, 1899, and was convicted of murder in the second degree. It was charged by the prosecution that these persons, jointly indicted for murder, attempted to commit a burglary, but were discovered, and that while the defendant was endeavoring to escape he committed the murder for which he was convicted. The occurrence took place between 3 and 4 o'clock in the morning, when it was quite dark; and the only serious question of fact presented was as to the identification of the defendant as the man who fired the shot that killed the deceased. The principal evidence as to the identity of the defendant was the testimony of two women, with one of whom he was living at the time of declarations made by the defendant. The defendant denies the truth of this testimony, and denies that he had anything to do with the burglary, or that he killed the deceased. We should have no difficulty in affirming this judgment, were it not for an exception to the admission of a written statement purporting to have been made by Bauman, who was indicted with the defendant. The crime was committed on the morning of the 24th of January, 1899; the defendant and Bauman were arrested on the morning of the 26th of January; and on the same day Bauman made a state-

ment to Police Captain Diamond, which was reduced to writing. Bauman and the defendant were then taken into the captain's room. The statement was read over to Bauman in the presence of the defendant, and was signed by Bauman. The captain, on his examination as a witness, testified that after this statement was signed by Bauman the captain asked the defendant if what Bauman said was true, but Young made no statement. The people offered the statement in evidence, which was objected to by the defendant, but which objection was overruled, to which an exception was taken. The statement was then read to the jury. It implicated the defendant as one of those who attempted the burglary. After this statement was read to the jury, the captain testified that the statement was read to Young by himself, but that Young refused to say anything. Upon cross-examination he testified that the defendant Young did not say anything, and that he told him that he did not expect him to say anything; that anything he might say might be used against him, and that he did not find any fault with him for not answering; that Young said he had nothing to say; that the witness read the statement to him, so that he would know what the other witnesses had said in connection with the crime that had been committed. "Q. So that the only reason you assigned was that you wanted him to know what evidence the police authorities had? A. Yes." It is quite clear that this statement of Bauman was hearsay and incompetent, unless it was made competent by the occurrence to which Capt. Diamond testified, and which has been referred to. A statement of a third party which in its nature is hearsay and incompetent can only be made competent when it is read to the defendant under such circumstances that he is called upon to deny it, so that his failure to deny it can be deemed an acquiescence in its truth. The mere fact that such a statement is read in the hearing of a third party is not sufficient to make it competent evidence against him. The situation must be such as clearly requires from him some reply, so that his silence may be considered as an admission of the truth of the charge. The question as to the admissibility of statements of this kind has been lately considered by the court of appeals in the case of People v. Kennedy, 164 N. Y. 449, 58 N. E. 652, where Judge Haight, in delivering the opinion of the court, says:

"There are circumstances under which the declarations of persons made in the presence of the accused are competent, but they are regarded as dangerous, and should always be received with caution, and should not be admitted unless the evidence clearly brings them within the rule. Declarations or statements made in the presence of a party are not received as evidence in themselves, but for the purpose of ascertaining the reply the party to be affected makes to them. They are only competent when the person affected hears and fully comprehends the effect of the words spoken, and when he is at full liberty to make an answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement, by his remaining silent."

Judged by this rule, it would seem that this statement was incompetent. The paper was read to the defendant, but he was cautioned that he was not required to speak, as anything he said might be used against him, and was told that the object of reading the statement

to him was to inform him of the nature of the evidence that the police had against him. There was certainly nothing under these circumstances which called upon the defendant to reply, or from which his failure to reply could be deemed an assent to the truth of the statement. It might well be that the defendant, being thus charged with murder, under arrest, cautioned by the captain not to speak, would consider his proper course to be to follow the captain's caution and say nothing. His silence under these circumstances cannot be deemed an assent to the truth of the statement made.

While we think the evidence as to the defendant's identity was quite sufficient to justify the finding of the jury without Bauman's statement, as the identification of the defendant was the principal question at issue, and as this statement bore directly on that point, and, if true, was conclusive against the defendant, its admission was an error of such a character as to require us to reverse the judgment.

It follows that the judgment appealed from must be reversed, and a new trial ordered.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

HATCH, J. (dissenting). No one, we think, can read this record without reaching the conclusion that the defendant was guilty of the offense charged in the indictment, and the jury would have been justified in convicting him of murder in the first degree. They did, however, as was their right, give the defendant the benefit of whatever doubt was raised by the testimony, and found the defendant guilty of murder in the second degree. While the evidence is, in a large measure, derived from polluted sources, yet it is to be borne in mind that the only witnesses who could give testimony concerning it were those persons with whom the defendant consorted and cohabited; and immunity should not be given to the commission of crime simply because witnesses to guilt are themselves of bad character or criminals. If such rule should obtain, many crimes of a heinous character would go unpunished. Confessedly, the defendant is of the same character as, if not worse than, the worst of the witnesses against him; and he is not to be heard in complaint that his guilt may not be established by the evidence of those persons with whom he habitually associated. The law has placed about the consideration of such testimony sufficient safeguards to save every legal right of which this defendant was possessed. There are some known facts and circumstances which concededly exist, and to which the defendant bore relation. The oral testimony of the witnesses fit into the known facts and circumstances in such manner and form as satisfies the mind, beyond a reasonable doubt, that truth proceeded from the mouths of these witnesses, even though moral degradation was their normal state. We have, therefore, presented a case where no member of this court has a reasonable doubt of the guilt of this defendant of the crime of which he has been convicted. He should not now be permitted to escape just punishment therefor, if, within any principle of law, the conviction may be sustained. It must be conceded that the statement which was read in evidence made by

Bauman to Police Captain Diamond, and by him read to the defendant, constituted error, within the decision of People v. Kennedy, 164 N. Y. 449, 58 N. E. 652. As the question of identity of the defendant was one of the principal features of the case, this testimony was important, as it bore directly upon such issue. The only point, therefore, which the case presents, is whether this testimony may be disregarded without prejudice to any substantial right possessed by the defendant. By the provisions of section 542 of the Code of Criminal Procedure, the court is authorized, upon appeal, to "give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the accused." In speaking of this section, the court, in reviewing a conviction of murder in the first degree, said:

"The spirit of this legislation, as is its letter, is that if the accused has had a fair trial upon his accusation, and if this court is satisfied that the conviction is sufficiently supported by competent evidence, that conviction shall stand. We are not justified by those provisions of the Code [Code Cr. Proc. §§ 528, 542], any more than by a true sense of justice, in reversing a conviction, if the rights of the accused have not been violated, and the verdict against him was not reached by error, or by way of passion or prejudice." People v. Hoch, 150 N. Y. 291, 44 N. E. 976.

In People v. Wayman, 128 N. Y. 585, 27 N. E. 1070, testimony was permitted, by an accomplice of the defendant, of the contents of a letter written by the defendant, but not produced. While not material as tending to support the commission of the crime, it was material as affording support to the accomplice's testimony as to his meeting the defendant at a particular time. Consequently it was material testimony, and the point was presented by exception. The court, however, held that, in view of the strength of the case against the defendant furnished by other testimony, the error would be disregarded, within the rule announced by the Code. In the present case it can be safely said that the jury would have reached a like result if this statement had been entirely stricken from consideration by them. Defendant had in all other respects a perfectly fair trial, and his rights were not in the slightest degree invaded. The crime proved was most heinous in character, and failure to punish it would constitute a gross miscarriage of justice. Under such circumstances, in view of the provisions of the Code of Criminal Procedure, we think that this error may not be said to have seriously affected any substantial right of the defendant, and that therefore it should be disregarded. If this view obtain, it follows that the judgment of conviction should be affirmed.

O'BRIEN, J., concurs.